A. D. KENAMOND, Judge.
On Wednesday, April 21, 1948, at about eight-ten o’clock in the morning a fire originated in the state road commission’s garage in Huttonsville and the state road garage was completely destroyed down to its foundation, floor and platform, and the store building of J. A. Cox, immediately to the south thereof, but separated by a nine to eleven foot alley, was also, together with a substantial portion of its contents and fixtures, destroyed as a result of this fire originating in the state road commission’s garage.
*124 J. A. Cox and several fire insurance companies, as subrogees of J. A. Cox, have asked for damages totaling $24,080.71.
At seven-thirty o’clock on the morning of April 21, 1948, Walter Arbogast, a crew foreman for the state road commission, brought in, for repair, a pickup truck on which the gas tank was leaking. This truck was run in on the concrete floor just inside the door, which was left open, and about four feet away from the wall facing the store of J. A. Cox. Virgil Taylor, a mechanic working under the direction of Robert Rosencrance, maintenance foreman at the state road commission’s Huttonsville garage, had gone underneath the said truck on a creeper and had drawn off a five-gallon open bucket of gasoline from the leaking tank and set it to the side next to the wall, when the gasoline which had spread over a portion of the floor under the front of the truck caught fire. This fire spread rapidly to the open bucket of gasoline, and thence readily to the wall next to the Cox store. The garage was not fireproof in any sense of the word.
The question for the determination of the court appears to be whether respondent was negligent in starting the fire and that such negligence was the proximate cause of the damages to the claimant J. A. Cox, or whether the agent — employe of the respondent failed to use ordinary skill and care in controlling or extinguishing the fire and preventing the communication thereof to the property of J. A. Cox.
Considerable testimony offered in this case, we believe, is Immaterial to the question of origin of the fire; the type of the garage structure, the storage therein of inflammable and highly combustible materials, such -as capped drums of kerosene, diesel oil and lubricating oils, the location of a gasoline pump therein, et cetera, had nothing to do with the origin of the fire, but they did create a situation which in the event of fire required great care and caution.
What was the cause of the fire originating in the respondent’s garage? A brief submitted in behalf of the respondent by W. Bryan Spillers, assistant attorney general, states that “the *125 cause of the fire to this time remains unknown and obscure”; also, that “In the absence of violations of statutes where such violations are made prima facie negligence by the defendant, negligence is not presumed; it must be proved by a preponderance of the evidence in order to establish negligence and liability. This the claimants have utterly failed to do.”
We readily concede that there were no violations of statutes, but a majority of the court is not ready to grant that the evidence does not establish negligence and liability.
The original notice prepared and filed on behalf of the claimants stated that sparks emanating from a creeper drawn across a concrete floor had set fire to the accumulated gasoline beneath the truck being repaired. When counsel for claimants amended the complaint by saying that upon further investigation the negligent handling of a blow torch by Virgil Taylor may have been the actual cause of the fire rather than sparks from the metal wheels of the creeper, they confused the issue and only drew attention from what we believe was a preponderance of evidence that sparks from the creeper started the fire.
One witness stating that Virgil Taylor was using what “looked like a blow torch” had to see this at a distance of seventy-five feet. A second witness at eight or ten feet outside the door of the garage stated that “it looked like the man working beneath the truck had an acetylene torch,” but he saw no acetylene tank from which the torch would have been supplied. In both instances the fire was already blazing up under the truck. This testimony appears to be too vague to be given credence, especially since there was no record of such statements having been made immediately after the fire. Virgil Taylor, the mechanic, testified that the only blow torch, or soldering torch in the garge was kept and used at a workbench at the rear of the garage some thirty feet from the entrance door. Also, Robert Rosencrance, maintenance foreman, testified that after the fire he found this torch at or near where the workbench had been.
From attentive hearing and careful reading of the voluminous testimony in this case we find it evident that Virgil *126 Taylor, and Virgil Taylor only, would know from whai particular act "on his part the fire originated.
The testimony of Virgil Taylor was to the effect that the leaking gasoline which had spread a good — eight or ten feet— circle over the floor went up in flames when he slid out on the creeper from under the truck, but he didn’t know what caused the fire. To be weighed against or with this testimony is that of Robert Roscncrance concerning Taylor’s statement to him immediately after the fire. He testified that Taylor said he drained off one five-gallon bucket of gasoline and “brought it out on his creeper and took the other five-gallon bucket and put it. back and went to creeping in under with his creeper and he said the creeper must have made a spark on the concrete floor and it caught.” (Record p. 225). Roscncrance further stated and later reiterated that Taylor said the creeper was “bound to make a spark.” (Record pp. 188-225). Roscncrance also, on being questioned, stated that Virgil Taylor was not using care when he attempted to roll a creeper under the truck, not if he had spilled gas there. (Record pp. 196, 197).
J. E. Landis, insurance adjuster, testified that he talked with Virgil Taylor in the afternoon of the day of the fire, when the latter stated that “gasoline had dripped down over a large area on the floor and when he went to pull his creeper across the concrete floor it caused sparks which ignited the gasoline.”
J. A. Cox, the claimant, testified that Taylor, presumably on the day of the fire, said he was repairing a leaky tank and doing it near the door because of the fact that it was a dangerous job. He talked with Taylor several times after that about the fire and the latter stated that the fire originated from a creeper.
A majority of the court considers this a preponderance of evidence as to the cause of the fire and further that Virgil Taylor was not using proper care and caution to prevent a fire. The danger was great and a great degree of prudence and caution was called for. In a garage of frame construction as susceptible to fire as the subject garage and with no possible *127 ventilation other than through an open entrance door, unusual preventive care was called for. An operator of a commercial garage or service station would have been expected to observe fire prevention suggestions such as are given in an oil company’s printed “Safety in the Service Station,” by flushing away spilled gasoline with generous quantities of water either before operating a car or before using any equipment of an abrasive nature nearby. While Huttonsville had no system of water supply at the time to prevent spread of fire, there was a water pump near the front of the garage.
Did Virgil Taylor exercise proper care and skill to prevent spread of the fire? It is evident that control was much more difficult than prevention. However, there were from four to six ten-quart buckets of chemically treated sand distributed about the inner walls of the garage and three fire extinguishers, two of them — one small and another larger — on the wall of the office about twelve feet to the left of the truck. One of these buckets may have been too near the fire by the right wall to be reached. The rest of the fire fighting equipmnt appeared to be accessible. However, several witnesses said they saw no one using any of it.
It is held by respondent that Virgil Taylor had caught on fire and “had to flee” the garage. Taylor, however, was able to rid himself rather quickly of any fire on his person, “The flames didn’t last but a second,” he said, (record p. 301), and he used his time to other purposes than preventing spread of the fire in the garage. He admitted that use of the sand buckets “would have helped an awful lot.” (Record p. 322). Instead he drove out the truck that was on fire and attempted to put out the fire on the truck by using the small fire extinguisher from the rack thereon. Under questioning he said he had first made an unsuccessful attempt to put out the fire in the garage with this small fire extinguisher.
We, a majority of the court, are convinced that the origin of the fire was due to the lack of care and prudence on the part of Virgil Taylor, an employe of the state road commission, and further that said Virgil Taylor by his lack of prudence *128 and skill failed to use the available and accessible equipment and materials for preventing the spread of the fire and its communication to the adjacent buildings in the circumstances. His lack of care and caution, prudence and skill compel us to hold that the state road commission is liable for damages to the claimants in this case.
The Supreme Court of Appeals of our state has held:
“What is ordinary care and prudence depends on the circumstances of the particular case. The greater the danger of communicating fire to the property of others, the more precautions and the greater the vigilance necessary to constitute such care.” Orlander v. Stafford, 98 W. Va. 502.
“When a private owner of property sets out fire upon his own property for a lawful purpose, or fire accidentally starts thereon, he is not liable for the damages caused by its communication to the property of another, unless it started through his negligence, or he failed to use ordinary skill and care in controlling or extinguishing it.” Mahaffey v. Lumber Company, 61 W. Va. 575.
“One setting fire on his premises is charged with the duty of exercising ordinary care and skill in preventing it from spreading and from being communicated to the property of another, and if he fails to exercise care and by reason thereof the fire is communicated to the property of another causing him damage the one setting fire is liable for damages.” Catron v. Sims, Auditor, 57, S. E. (2d) 465.
It was agreed and stipulated between the claimants and the state road commission that the damages to J. A. Cox resulting from destruction of his store building amounted to $8,324.00, constituting real property damages and that an award, if and when made by the court of claims, shall be broken down into three parts as follows:
Fifteen hundred dollars ($1500.00) to North British and Mercantile Insurance Company, Limited, subrogee of the rights of J. A. Cox to recover loss in said amount; fifteen hundred *129 dollars ($1500.00) to North River Insurance Company, sub-rogee of the rights of J. A. Cox to recover loss in said amount; and five thousand three hundred and twenty-four dollars ($5,324.00) to J. A. Cox, representing the uninsured real estate loss to him as a result of the subject fire.
It was agreed and stipulated between the claimants and the state road commission that the total amount of personal property loss as a result of the subject fire was $12,756.71 and that an award, if and when made by the court of claims, shall be broken down into four parts, as follows:
Two thousand Dollars ($2,000.00) to Standard Fire Insurance Company, of Hartford, Connecticut, subrogee of the rights of J. A. Cox to recover loss in said amount; one thousand dollars ($1000.00) to Mechanics and Traders Insurance Company, sub-rogee of the rights of J. A. Cox to recover loss in said amount; one thousand dollars ($1000.00) to Firemen’s Insurance Company, subrogee of the rights of J. A. Cox to recover loss in said amount; and eight thousand seven hundred fifty-six dollars and seventy-one cents ($8,756.71) to J. A. Cox, representing his uninsured loss of personal property as a result of the subject fire.
In addition to the personal property destroyed by the subject fire and for which a claim against the state road commission has been made in the amount of $12,756.71, there was about $2000.00 worth of stock which the claimant J. A. Cox was able to remove from the burning store. This rescued stock was transferred to a store at Mill Creek operated by the said A. J. Cox.
With respect to an additional item of damages of $3000.00 to J. A. Cox as an individual for loss of use and occupancy of the store building at Huttonsville and loss of profits for a period of five months after the fire on April 21, 1948, there was no agreement between the counsel for J. A. Cox and counsel for the state road commission.
It is impossible to determine whether it would have required five months, or more or less than five months, to replace the *130 destroyed store building at the Huttonsville location. No immediate attempt to rebuild was made, Mr. Cox later deciding to erect a building for a different purpose on the site of the destroyed store building.
Also, the estimated profits of $600.00 per month were based on the complete stock of Mr. Cox at the Huttonsville store. About $2000.00 worth of stock had been saved and handled at his Mill Creek store with resulting profits from its sale and succeeding turnovers. The court also notes that Mr. Cox, though not waiving claim for loss of profits, frankly stated that the $3000.00 estimate “might be a little far-fetched” because he did not rebuild or attempt to rebuild. It would further appear from his testimony as to gross sales and net that the expense of handling his sales was underestimated in hitting upon a profit of $600.00 per month. We are therefore of the opinion that $1500.00 would be a more reasonable estimate of loss in profits during the time that would have been required to rebuild the store.
We, a majority of the court, recommend the payment of the amounts stipulated and agreed upon between the counsel for the claimants and the counsel for the state road commission to the several claimants as stipulated, the amount of damages $21,080.71 having been supported by inventory of stock three months prior to the fire, by invoices of stock purchased during the three months prior to the fire, and by consumer sales tax record during the period between taking of inventory and date of fire.
We recommend also the payment of $1500.00 to J. A. Cox for loss of profits during the time he might reasonably have been expected to replace the store lost by fire.